COMMONWEALTH vs. ABELARDO GUADALUPE.

Bristol. October 6, 1987. — December 21, 1987.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Insanity. Evidence,* Insanity.

A criminal defendant is not required to present expert psychiatric testimony in order to raise a claim of lack of criminal responsibility. [374-375]

The provisions of Mass. R. Crim. P. 14 (b) (2) which impose sanctions for failure to provide notice to the Commonwealth, before trial, of an intention to raise insanity as a defense do not bar a defendant from presenting nonexpert testimony with respect to the issue of criminal responsibility. [375-376]

At a criminal trial, lay testimony of two witnesses proffered by the defendant to show his lack of criminal responsibility was properly excluded, where the evidence did not relate to the defendant's mental condition at a time proximate to the alleged criminal activity. [376]

At a criminal trial it was reversible error for the judge to preclude the defendant from testifying about his mental condition at the time the alleged criminal activity occurred. [376-377] O'CONNOR, J., dissenting.

INDICTMENT found and returned in the Superior Court Department on June 14, 1983.

The case was tried before *Elizabeth J. Dolan,* J.

After review by the Appeals Court the Supreme Judicial Court granted leave to obtain further appellate review.

*Thomas C. Federico,* Committee for Public Counsel Services, for the defendant.

*Dana A. Curhan,* Assistant District Attorney, for the Commonwealth.

NOLAN, J. The defendant, Abelardo Guadalupe, was indicted by a Bristol County grand jury for the crime of armed robbery.[1] He was then committed to Bridgewater State Hospi-

---

[1] Guadalupe was indicted along with a codefendant, Carlos Cruz. Their cases were consolidated for trial. Only Guadalupe's conviction is challenged on appeal.

tal, pursuant to G. L. c. 123, § 15 (b) (1984 ed.), for a total of forty days of observation.[2] Following the observation period, the examining physician filed a report with the court which stated that the defendant showed no evidence of acute major mental illness. After a hearing, the judge found the defendant competent to stand trial.

Following a jury trial in the Superior Court, the defendant was found guilty of armed robbery and sentenced. The Appeals Court reversed the conviction. *Commonwealth* v. *Guadalupe,* 23 Mass. App. Ct. 97, 102 (1986). We allowed the Commonwealth's application for further appellate review. We agree with the Appeals Court and reverse the judgment of conviction.

The issues on appeal arose when counsel for the defendant attempted to call Diana Gonsalves, the defendant's former live-in girl friend, and Cecilia Gonzalez, the defendant's sister, to testify to the defendant's history of mental illness and self-destructive behavior. The judge conducted a voir dire to determine whether the witnesses would be allowed to testify before the jury.

Diana Gonsalves stated that she lived with the defendant for a six-year period which ended five years prior to the date of the robbery. She said that the relationship terminated because the defendant became ill, he talked to himself, and he had attempted suicide. This conduct frightened Gonsalves, causing her to "get rid of" the defendant.

The defendant's sister, Cecilia Gonzalez, testified on voir dire that she took her brother in after he was ejected from his girl friend's residence. She stated that after a couple of months she had to call the police to take him to a psychiatric hospital for treatment because he was "very sick" and she was "afraid that he would do something." After his stay at the hospital, the defendant did not return to live at his sister's home.

The judge ruled that the witnesses would not be allowed to testify to the defendant's mental condition because "lack of criminal responsibility is something that must be addressed by

---

[2] The original twenty-day commitment was extended for an additional twenty-day period.

an expert witness and after examination," and that "it certainly cannot be raised by the individual himself or by laymen." The judge added that the testimony of the two women concerning the defendant's past habits also raised problems of timeliness of the conduct in relation to the crime.

At the close of the voir dire examination of the two women, the defendant took the stand. The judge sustained objections to questions on direct examination regarding the defendant's prior hospitalization. Specifically, the judge refused to permit defense counsel to inquire whether the defendant was being treated for mental illness during the month that the crime occurred.

The issue before this court is whether the judge committed error of law in refusing to allow the defendant to present nonexpert testimony bearing on his lack of criminal responsibility. Because the defendant did not provide the Commonwealth before trial with notice of his intention to present an insanity defense, the case also raises the question whether under Mass. R. Crim. P. 14 (b) (2), 378 Mass. 874, 878-881 (1979), the defendant's failure to provide such notice precludes him from introducing evidence concerning his insanity at the time of the crime through his own testimony and through the opinion testimony of lay persons.[3]

Before the adoption of the Massachusetts Rules of Criminal Procedure in 1979, the defense of insanity was open to the defendant at any time. *Chin Kee* v. *Commonwealth,* 354 Mass. 156, 158 (1968). This general rule still controls. The issue of

---

[3] The notice provision of rule 14 (b) (2) (A) requires that: "If a defendant intends to rely upon the defense of lack of criminal responsibility because of mental disease or defect at the time of the alleged crime, he shall, within the time provided for the filing of pretrial motions by rule 13 or at such later time as the judge may allow, notify the prosecutor in writing of such intention. The notice shall state: (i) whether the defendant intends to offer testimony of expert witnesses on the issue of lack of criminal responsibility because of mental disease or defect; (ii) the names and addresses of expert witnesses whom the defendant expects to call; and (iii) whether those expert witnesses intend to rely in whole or in part on statements of the defendant as to his mental condition at the time of the alleged crime or as to his criminal responsibility for the alleged crime."

lack of criminal responsibility may arise from the facts of the case, through the Commonwealth's witnesses, through lay testimony, through the defendant's own testimony, or any combination thereof. *Commonwealth* v. *Mattson,* 377 Mass. 638, 644 (1979). Despite the rhetorical force of the dissent, the defendant is not required to present expert psychiatric testimony to raise the issue of insanity as a complete defense. *Commonwealth* v. *Monico,* 396 Mass. 793, 798 (1986). *Osborne* v. *Commonwealth,* 378 Mass. 104, 112 (1979). The dissent's reliance on *Commonwealth* v. *Mills,* 400 Mass. 626, 630-631 (1987), is misplaced. The Appeals Court properly cited as error the judge's misapprehension that lack of criminal responsibility must be addressed by an expert witness after examination. *Commonwealth* v. *Guadalupe,* 23 Mass. App. Ct. 97, 101 (1986).

The defendant's failure to notify the Commonwealth under rule 14 (b) (2) of his intention to present an insanity defense bars only the introduction of expert opinion and then only in circumstances where the defendant has refused to submit to a court-ordered psychiatric examination. Under the heading "Sanctions for Noncompliance," rule 14 (c) (2) provides: *"Exclusion of Evidence.* The judge may in his discretion exclude evidence for noncompliance with a discovery order issued pursuant to this rule. Testimony of the defendant and evidence concerning the defense of lack of criminal responsibility which is otherwise admissible cannot be excluded except as provided by subdivision (b)(2) of this rule." Mass. R. Crim. P. 14 (c) (2), 378 Mass. 880 (1979). The scope of the trial judge's exclusionary power under subdivision (b) (2) is defined as follows: "If a defendant refuses to submit to an examination ordered pursuant to and subject to the terms and conditions of this rule, the judge may prescribe such remedies as he deems warranted by the circumstances, which may include exclusion of the testimony of any expert witness offered by the defendant on the issue of his mental condition or the admission of evidence of the refusal of the defendant to submit to examination." Mass. R. Crim. P. 14 (b) (2) (B) (iv), 378 Mass. 880 (1979).

The limited exclusionary provisions of rule 14 (c) (2) depart significantly from the broader language of its Federal counterpart, which provides: "If there is a failure to comply with the requirements of this subdivision, insanity may not be raised as a defense." Fed. R. Crim. P. 12.2(a). We decline to expand the scope of sanctions available under rule 14 (c) (2) to include a complete bar to the defendant's right to present an insanity defense through nonexpert sources.

The lay testimony proffered by the defendant's former girl friend and by his sister was properly withheld from the jury because the women offered no evidence of the defendant's mental condition proximate to the time of the robbery. *Commonwealth* v. *Palmariello,* 392 Mass. 126, 137 (1984). *Commonwealth* v. *Chasson,* 383 Mass. 183, 187 (1981). The defendant's testimony, however, did not present the same problems of timeliness. The judge was sufficiently on notice of the defense theory being pursued;[4] hence, her ruling that defense counsel was entering into an inadmissible line of questioning with the defendant was improperly restrictive. The defendant wished to testify that he "used to hear noises," that very shortly before the robbery he visited a mental health clinic, and that he felt better "now because [he was] under a psychiatrist's care." It is on this issue that we reverse the defendant's conviction.

The Commonwealth contends that, because the defendant testified that he was drunk on the day of the crime, his testimony would not have established a lack of criminal responsibility. The Commonwealth asserts as support for its position that intoxication is not a disease or defect that would constitute an insanity defense under the standard espoused in *Commonwealth* v. *McHoul,* 352 Mass. 544, 546-548 (1967). See *Osborne* v. *Commonwealth, supra* at 111. This argument, however, skirts the question whether the judge improperly precluded counsel

---

[4] We agree with the Appeals Court's conclusion that the questions presented to the defendant's sister and girl friend on voir dire coupled with the questions put to the defendant, left the judge with "no doubt about the defense theory being pursued." *Guadalupe, supra* at 101.

from questioning the defendant about his mental condition at the time of the crime. That the defendant's testimony would not have produced sufficient evidence to warrant an instruction on his lack of criminal responsibility is wholly speculative. See *Commonwealth* v. *Mills,* 400 Mass. 626, 630-631 (1987). The Commonwealth's argument is, therefore, untenable.

Finally, the Commonwealth, relying on *Commonwealth* v. *Cosme,* 398 Mass. 1008 (1986), submits that, even if the exclusion of the defendant's proffered testimony was error, the appropriate remedy would not be a reversal of the judgment but rather a remand of the case for an evidentiary hearing to determine if the defendant could produce sufficient evidence of his lack of criminal responsibility. The issue in *Cosme,* however, is inapposite to that presented in the instant case. There, the question arose as to whether defense attorney's failure to investigate an insanity-defense amounted to ineffective assistance of counsel. Before that determination could be made, an evidentiary hearing was necessary to establish facts not contained in the record that would determine whether the defendant was prejudiced by counsel's failure to investigate further the psychological evaluations of his client. Unlike *Cosme,* the case at bar involves an erroneous ruling of law by the judge which is completely apparent on the record. The proper remedy is to reverse the judgment and grant the defendant a new trial.

> *Judgment of the Superior*
> *Court reversed.*
>
> *Verdict set aside.*

O'CONNNOR, J. (dissenting). The judge stated that "lack of criminal responsibility is something that must be addressed by an expert witness and after examination," and that "it certainly cannot be raised by the individual himself or by laymen." The defendant made no suggestion to the judge that he was prepared to produce expert testimony. The judge then excluded the de-

fendant's testimony that he "was being treated for mental illness during the month that the crime occurred." *Ante* at 373-374. "The defendant wished to testify," according to the court, "that he 'used to hear noises,' that very shortly before the robbery he visited a mental health clinic, and that he felt better 'now because [he was] under a psychiatrist's care.'" *Ante* at 376. The court identifies no other evidence available to the defendant bearing on his criminal responsibility at the time of the alleged crime.

While it is true that "[i]n an appropriate case the very facts of a crime themselves might be some evidence of the existence of legal insanity," *Commonwealth* v. *Mattson,* 377 Mass. 638, 644 (1979), thus raising the criminal responsibility issue on which the Commonwealth carries the burden of proof, this is not such a case. In my view, *Commonwealth* v. *Mills,* 400 Mass. 626 (1987), notwithstanding, the meager facts the defendant sought to place in evidence in this case, in the absence of expert testimony, fall far short of being sufficient to place the defendant's criminal responsibility in issue. See *Commonwealth* v. *Mills, supra* at 636 (O'Connor, J., with whom Nolan and Lynch, JJ., joined, dissenting). Accepting the defendant's proffered testimony as true, one can only speculate whether, at the time of the alleged crime, "as a result of mental disease or defect he lack[ed] substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law." See *Commonwealth* v. *McHoul,* 352 Mass. 544, 546-547 (1967), quoting § 4.01 of the American Law Institute's Model Penal Code, Proposed Official Draft (1962).

I continue to adhere to the view I expressed in *Mills* that the criminal responsibility issue is not raised by evidence that demonstrates no more than a possibility that the defendant was legally insane at the time of the alleged offense. The judge's observations about the necessity for expert testimony, understood not as an academic pronouncement but rather as a ruling in this case that without expert testimony the proffered testimony was insufficient to raise the criminal responsibility issue, were, in my judgment, correct. Furthermore, even if

the judge incorrectly thought that expert testimony is always required, her misconception was harmless. Since the evidence that had been admitted, together with the proffered evidence, was insufficient to raise the criminal responsibility issue, and the proffered evidence had no bearing on any other issue in the case, the judge correctly excluded it. I would affirm the conviction.